## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>BUBACAR B. BARRY,<br><div align="right">Debtor.</div><hr>WORLD BUSINESS LENDERS, LLC,<br><br><div align="center">Plaintiff,</div><br>   v.<br><br>BUBACAR B. BARRY,<br><br><div align="center">Defendants.</div> | Bankruptcy No. 5:15-bk-05281-RNO<br><br>Chapter 7<br><br>Adv. No.: 5:16-ap-00038-RNO |

**PLAINTIFF WORLD BUSINESS LENDERS, LLC'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT, BUBACAR B. BARRY**

Daniel R. Schimizzi, Esq.
PA I.D.: 311869
dschimizzi@bernsteinlaw.com
Kirk B. Burkley, Esq.
PA I.D.: 89511
kburkley@bernsteinlaw.com
BERNSTEIN-BURKLEY, P.C.
707 Grant St., Ste. 2200, Gulf Tower
Pittsburgh, PA 15219
Phone:(412)456-8121
Fax:    (412)456-8135

Attorneys for Plaintiff,
World Business Lenders, LLC

Plaintiff World Business Lenders, LLC ("WBL"), by and through its undersigned counsel, respectfully submits this *Brief in Support* ("Brief") of its *Motion for Summary Judgment* ("Motion") against Bubacar B. Barry ("Defendant" or "Debtor") pursuant to Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.

## I. INTRODUCTORY STATEMENT

The debt the Defendant owes to WBL is non-dischargeable under either Section 523(a)(2)(A) or Section 523(a)(6) of the Bankruptcy Code. If the Defendant did not grant WBL a lien in his 2009 Mercedes Benz, VIN: 4JGBB86E39A530776 ("Vehicle"), then his false statements made in pledging the Vehicle as collateral to induce WBL to fund the $40,000.00 loan ("Loan") constitute actual fraud. If the Defendant granted WBL a lien in the Vehicle, then his transfer of the Vehicle in June of 2014 to an insider during the Defendant's commission of a fraudulent transfer constitutes a willful and malicious destruction of WBL's security interest in the Vehicle.

The material facts that are not subject to a genuine dispute are: (i) the Defendant applied for and received the Loan from WBL; (ii) the Loan Documents (as defined herein) granted WBL a security interest in the Vehicle; (iii) WBL perfected its security interest in the Vehicle by recording its lien on the Title; and (iv) the Defendant transferred the Vehicle to an insider to satisfy a $20,000 debt owed to an insider within one (1) year of his bankruptcy petition. WBL respectfully submits that the facts and evidence of record establish that the debt the Defendant owes to WBL should be deemed non-dischargeable in accord with either Sections 523(a)(2) or Section 523(a)(6) of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, "Bankruptcy Code").

1

## II.     FACTUAL BACKGROUND

The Defendant owned and operated a company known as Community Check Cashing

Services, Inc. ("CCCS").  *Deposition of Bubacar Barry,* August 8, 2016 ("Dep. Tr."), p. 16:8-14.[1]

When CCCS needed to secure capital to develop a prepaid debit card business, the Defendant

attempted to secure funding through Mr. David Smith ("Mr. Smith"), a former lender.  Dep. Tr.

22:13-24:2.   Since Mr. Smith's lending company could not fund the loan needed by the

Defendant, the Defendant ultimately secured the Loan through WBL.  Dep. Tr., 25:3-15.  WBL

is a lending institution that provides commercial loans to qualified applicants.  *See Affidavit of*

*Alex Nadler in Support of Plaintiff, World Business Lenders, LLC's Motion for Summary*

*Judgment* ("Nadler Affidavit"),[2] ¶  4.   The Defendant applied electronically for the Loan

through WBL by updating the applications he previously submitted to Mr. Smith and

providing his bank statements to WBL.  Dep. Tr. 49:17-50:19; Nadler Affidavit, ¶ 8.  WBL also

required that the Defendant provide proof that he owned the Vehicle, which he provided to

WBL.  Dep. Tr. 48:22-49:16; 51:1-21.

Once the Defendant completed the application, WBL reviewed and approved the

requested Loan and scheduled a telephone call with the Defendant to finalize the documents

necessary to fund the Loan.  Nadler Affidavit, ¶ 9.  The Defendant participated in a telephone

call with Mr. Smith and a representative of WBL during which the terms and conditions of the

Loan were explained to the Defendant.  Dep Tr. 32:25-33:21.  During the telephone call, the

Defendant reviewed several loan documents sent to him via electronic mail.  Dep. Tr., 33:22-

34:16.  In total, WBL reviewed the following documents with the Defendant: (i) a Business

---

1.      Excerpts of the Defendant's Deposition are attached hereto, made part hereof, and marked Exhibit "A".
2.      The Nadler Affidavit is attached hereto, made part hereof, and marked Exhibit "B".

Loan Summary; (ii) a Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) form; (iii) a Business Loan Purpose Affidavit; (iv) a Business Promissory Note and Security Agreement ("Note"); (v) a Continuing Guaranty, Personal (Unlimited) form ("Guaranty"); (vi) a Cooperation Agreement; (vii) a Business Promissory Note and Security Agreement – Confession of Judgment acknowledgment; (viii) and a Continuing Guaranty (Unlimited) Confession of Judgment form (collectively, "Loan Documents").  Dep. Tr., 33:22-34:16; Nadler Affidavit, ¶ 10.

The Defendant verbally confirmed on the telephone conference that he approved the grant of a lien on the Vehicle and then executed an *Application for Duplicate Title or to Record, Renew, Remove a Lien, or to Correct Lien Information by Lien Holder* ("DMV Lien Application")[3] that confirmed the grant of a lien on the Vehicle to WBL.  Nadler Affidavit, ¶ 13.  Shortly after the conclusion of the telephone conference with the Defendant, WBL funded the Loan to CCCS.  Dep. Tr., 36:7-14; Nadler Affidavit, ¶ 14.  After WBL funded the Loan on or about December 11, 2013, the Defendant made daily payments $443.53 to WBL in accord with the Note.  Dep. Tr., 39:6-22.  Having funded the Loan to the Defendant, WBL perfected its security interest in the Vehicle by recording its lien on the title[4] to the Vehicle through the Pennsylvania Department of Transportation. Nadler Affidavit, ¶ 15.

After making several payments under the Note, the Defendant stopped making the payments when they came due.  Dep. Tr., 69:11-71:16.  On December 31, 2014, WBL filed an *Entry of Appearance and Praecipe for Assessment of Damages and Confession of Judgment* ("Confession of Judgment") with the Court of Common Pleas of Monroe County, Pennsylvania, at Civil Action No. 2014-11077.  WBL confessed judgment against CCCS and

---

3.      The DMV Lien Application is attached hereto, made part hereof, and marked Exhibit "C".
4.      The title to the Vehicle is attached hereto, made part hereof, and marked Exhibit "D".

the Defendant in the amount of $42,291.26, which includes principal, interest through December 22, 2014, NSF fees, penalty amount, collection and repossession costs, and an attorneys' commission of ten percent (10%) allowed under the Note and Guaranty. WBL subsequently learned that he transferred the Vehicle to satisfy a debt owed to an insider.

While the dispute between the Defendant and WBL escalated, the Defendant also operated a business known as B. Barry Check Cashing ("BBCC"), located in New York. Dep. Tr., 55:3-5. During his operation of BBCC, the Defendant accepted $20,000.00 from his sister to use as working capital. Dep. Tr. 55:9-24. BBCC went out of business in March of 2013. Dep. Tr., 56:10-20. In order to repay the $20,000.00 owed to his sister, the Defendant transferred the Vehicle to his daughter, who then promised to satisfy the $20,000.00 debt owed to the Defendant's sister. Dep. Tr., 58:14-59:21. The Defendant transferred the Vehicle to his daughter in June of 2014. Dep. Tr., 60:3-8. The Defendant did not notify WBL of his intent to transfer the Vehicle to his daughter, did not obtain WBL's consent to transfer the Vehicle to his daughter, and did not deliver the proceeds from the transfer of the Vehicle to WBL. *See Admissions* (as defined herein), 18 – 22.

### III. PROCEDURAL HISTORY

On or about December 10, 2015 ("Petition Date"), the Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Having learned of the Defendant's transfer of the Vehicle, WBL commenced the above-captioned adversary by filing the *Complaint Objecting to Dischargeability of Debt Pursuant to Section 523(a) of the Bankruptcy Code and Objecting to Debtor's Discharge Pursuant to Section 727(a) of the Bankruptcy Code* (Adv. Doc. No. 1) ("Complaint"). The Defendant filed his answer on April 28, 2016, after which this Court entered a scheduling order on May 11, 2016.

4

In accord with the scheduling order, on July 5, 2016, WBL served the Defendant with its *First Requests for Admissions Directed to Debtor, Bubacar B. Barry* ("Admissions"), *First Set of Interrogatories Directed to Debtor, Bubacar B. Barry* ("Interrogatories"), and *First Set of Requests for Production of Documents Directed to Debtor, Bubacar B. Barry* ("Production") (collectively, "Discovery Requests").[5]  The Defendant responded[6] to WBL's Discovery Requests on or about August 4, 2016.  On August 8, 2016, WBL deposed the Defendant for use in connection with this adversary proceeding.  Prior to this Adversary, the Defendant never asserted that he did not execute the Loan Documents.  Dep. Tr., 76:4-10.  WBL submits this Motion as of September 8, 2016, said date being the deadline set by this Court to submit dispositive motions.

## IV.  ARGUMENT

### a.  Standard for Summary Judgment

WBL requests that this Court grant its Motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056.  Summary judgment is appropriate when "there is no genuine issue as to any material fact and. . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A motion for summary judgment "will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact."

---

5.    The Defendant's responses to WBL's Discovery Requests are attached hereto, made part hereof, and marked Exhibit "E".

6.    One (1) Admission remained unanswered by the Defendant.  The Defendant's responses to WBL's Interrogatories failed to fully answer each interrogatory, in that the Interrogatories requested that the Defendant specifically identify the facts upon which he relied in denying certain Admissions.  In response to those interrogatories, the Defendant did not identify facts, but merely stated his testimony would refute the admissions.  Finally, upon further discovery in this matter, WBL has reason to believe that the Defendant failed to answer the Discovery Requests truthfully and reserves all rights to see sanctions, fees and costs, including attorneys' fees, for having to prove the trust of the Admissions denied by the Defendant.

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In determining whether a dispute is genuine, the court's function is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 249.

In order to successfully oppose entry of summary judgment, the non-moving party cannot simply rest on its pleadings but, rather, must designate specific factual averments through the use of affidavits or other appropriate evidentiary material demonstrating a triable factual dispute. *See Celotex Corp.* v. *Catrett,* 477 U.S. 317, 324 (1986). That evidence must be sufficient to support a jury determination for the nonmoving party; evidence that merely raises some metaphysical doubt as to the validity of a material fact is not enough to satisfy the nonmoving party's burden. *See Anderson,* 477 U.S. at 250; *Matsushita Electric Industrial Co., Ltd.* v. *Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### b. Validity of the Loan Documents

There is no genuine issue of material fact as to the validity of the Loan Documents. In his answer to the Complaint and responses to the Discovery Requests, the Defendant has attempted to create an issue of triable fact by denying his approval and electronic execution of the Loan Documents. This Court can reject this argument as a matter of law because the applicable federal and state law recognize the validity of electronic signatures, such as the Defendant's signatures affixed to the Loan Documents.

As provided by Congress in the Electronic Signatures in Global and National Commerce ("ESIGN") Act, the "term 'electronic signature' means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and

executed or adopted by a person with the intent to sign the record." *See* 15 U.S.C.S. § 7006.

Further,

> Notwithstanding any statute, regulation, or other rule of law. . . with respect to any transaction in or affecting interstate or foreign commerce--
>
>> (1)  a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and
>>
>> (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

*See* 15 U.S.C.S. § 7001.

Similarly, under Pennsylvania law,[7] an Electronic Signature is any electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.  *See* 73 Pa. Stat. Ann. § 2260.103. Further, the following statutory provisions apply to documents bearing electronic signatures, such as the Loan Documents:

> (a)   FORM.— A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.
>
> (b)   FORMATION.— A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.
>
> (c)   WRITING.— If a law requires a record to be in writing, an electronic record satisfies the law.
>
> (d)   SIGNATURE.— If a law requires a signature, an electronic signature satisfies the law.

*See* 73 Pa. Stat. Ann. § 2260.303.

---

7.       Pursuant to Paragraph 12(d) of the Note, the laws of the Borrower's State set forth in Paragraph 1 of the Note – here, Pennsylvania – shall govern the Note and Loan Documents.

The evidence of record makes clear that the Defendant intended to obtain the Loan through WBL. The Defendant testified that he needed the Loan to develop CCCS's new pre-paid debit card business. Dep. Tr., 22:13-25. He obtained approval for the Loan by updating his application, providing bank statements, and participating in a telephone conference to review the Loan Documents. Nadler Affidavit, ¶¶ 9-10. The Defendant reviewed the Loan Documents electronically while participating on a telephone conference with Mr. Smith and a representative of WBL. Dep. Tr., 30:5-22; 33:22-34:16; Nadler Affidavit, ¶¶ 10-11. When the telephone conference concluded, WBL funded the Loan to CCCS. Dep. Tr., 36:7-15; Nadler Affidavit, ¶ 14. Once WBL funded the Loan, the Defendant made the payments to WBL as required under the Note. Dep. Tr., 29:8-16; 36:15-37:2. This undisputed evidence makes clear that the Defendant intended to obtain the Loan from WBL and, once WBL funded the Loan, the Defendant agreed to comply with the terms and conditions of the Note.

In an effort to refute WBL's claims in this proceeding, the Defendant alleges that he did not grant WBL a security interest in the Vehicle. Not only does this argument create the conundrum discussed *supra*, but it also fails to create a genuine issue of material fact as a matter of law because the parol evidence rule renders the Defendant's testimony inadmissible. "Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement." *Gianni v. R. Russell & Co.*, 126 A. 791, 792 (Pa. 1924) (citation omitted); *see also*, *American Bank and Trust Co. Of Pennsylvania v. Lied*, 409 A.2d 377, 381 (Pa. 1979) (The parol evidence rule "forbids the introduction of parol evidence of antecedent or contemporaneous agreements, negotiations and understandings of the

contracting parties for the purpose of varying or contradicting the terms of a contract which both parties intended to represent the definite and complete statement of their agreement."). "All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence[.]" *Gianni*, 126 A. at 792 (citation omitted).

The Note constitutes the complete agreement between CCCS and WBL that, *inter alia*, grants WBL a security interest in the Vehicle. Nadler Affidavit, ¶¶ 10-11. The Guaranty renders the Defendant jointly and severally obligated for CCCS's obligations under the Note. Nadler Affidavit, ¶¶ 10-11. These documents unequivocally set the terms of the Loan, grant WBL a security interest in the Vehicle, and bind the Defendant to the terms thereof. Further, and to confirm the security interest in the Vehicle the Defendant granted to WBL, the Defendant provided a copy of his driver's license and executed the DMV Lien Application that authorized PennDOT to record the lien in favor of WBL. Thus, it is clear and unambiguous that the Defendant granted WBL a lien on the Vehicle.

Further, paragraph 12(c) of the Note prohibits oral modification and later inclues an acknowledgment that the Defendant has read and understood the entire Note and knowingly, willfully and voluntary agrees to the terms thereof. Under applicable law, the Defendant cannot introduce evidence of any antecedent or contemporaneous agreements, negotiations, or understandings with WBL because the Loan Documents – which represent the complete and entire understanding of the parties – unambiguously set the terms by which WBL agreed to fund the Loan in exchange for, *inter alia*, the security interest in the

Vehicle. For these reasons, WBL believes and avers that it is entitled to a finding that the Loan Document are valid and enforceable against the Defendant as a matter of law.

### c. Non-Dischargeability Under Section 523(a)(2)(A).

Having established that: (i) the Loan Documents are valid and enforceable against the Defendant, and (ii) the Defendant granted WBL a security interest in the Vehicle, WBL avers that it is entitled to summary judgment based on its objection to the dischargeability of its debt under Section 523(a)(2)(A) of the Bankruptcy Code.

A creditor objecting to discharge of a debt owed to it by a debtor in bankruptcy has the burden of proving, by a preponderance of the evidence, that the debt falls into one of the exceptions found in § 523(a) of the Bankruptcy Code. *Franklin Cty. Area Dev. Corp. v. Leos (In re Leos)*, 462 B.R. 151, 154-55 (Bankr. M.D. Pa. 2011) (*citing Grogan v. Garner*, 498 U.S. 279 (1991)). Section 523(a)(2) provides, in pertinent part, that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt — (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A).

In order to meet its burden concerning non-dischargeability of debt under Section 523(a)(2)(A), a creditor must show each of the following elements by a preponderance of the evidence: (1) a misrepresentation, fraudulent admission, or deceptive conduct; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent deceive; (4) justifiable reliance on the statement or conduct; and, (5) damage caused by their justifiable reliance. *See Franklin County*, 462 B.R. at 155 (*citing In re Raisley*, 287 B.R.

639, 641-642 (Bankr. W.D. Pa. 2003); *In re Scott*, 294 B.R. 620, 628 (Bankr. W.D. Pa. 2003); *In re Casini*, 307 B.R. 800, 815 (Bankr. D. N.J. 2004)).

If the Defendant's averments are true – that he did not grant WBL a security interest in the Vehicle – then the Defendant's fraudulent misrepresentations in connection with granting WBL a security interest in the Vehicle render this debt non-dischargeable. The Note unequivocally states that WBL would receive a security interest in the Vehicle in exchange for funding the Loan. *See* Note, ¶ 6. The Defendant reviewed and approved the Loan Documents during a telephone conference with WBL. In connection therewith, the Defendant executed the DMV Lien Application that authorized PennDOT to record WBL's lien on the title to the Vehicle.

If, in fact, the Defendant did not agree to grant WBL a security interest in the Vehicle, then the Defendant either: (i) misrepresented his intent to grant the security interest in order to induce WBL to fund the Loan grant of the security interest; (ii) fraudulently admitted that he would grant WBL a security interest in the Vehicle when he knew he would not; or (iii) deceived WBL into believing he would grant WBL a security interest in the Vehicle. With respect to the Defendant's knowledge and intent, if he reviewed and agreed to the Note that granted WBL a security interest in the Vehicle but did not actually agree to grant WBL a security interest, then the Defendant knew of the falsity or deceptiveness this statement and intended to deceive WBL by agreeing to the security interest provision to remain in the Note.

As set forth in the Nadler Affidavit, WBL would not have funded the Loan but for the Defendant agreeing to collateralize CCCS's obligations with the Vehicle. Since WBL funded the Loan, WBL justifiably relied on the security interest it was to receive in the Vehicle.

Finally, the Defendant disposed of the Vehicle during the commission of a fraudulent transfer to and for the benefit of an insider, as defined in Section 101(31)(A)(i) of the Bankruptcy Code. The Defendant caused damage to WBL by depriving WBL of the Vehicle that collateralized WBL's Loan. For these reasons, if the Defendant did not grant WBL a lien in the Vehicle, his actions and conduct in connection with securing the Loan from WBL render the debt obligation owed to WBL non-dischargeable in accord with Section 523(a)(2)(A). Therefore, WBL prays that this Court grant summary judgment in its favor.

### d. Non-Dischargeability Under Section 523(a)(6)

If the Defendant granted WBL a lien on the Vehicle (which he did), then the Defendant's transfer of the Vehicle to his daughter renders the debt owed to WBL non-dischargeable under Section 523(a)(6). A discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). The creditor asserting that its debt is excepted from discharge under Section 523(a)(6) must prove its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 291.

Conversion of a secured party's collateral can be both a breach of contract and an intentional tort. *See GMAC Inc., v. Coley (In re Coley)*, 433 B.R. 476, 500 (Bankr. E.D. Pa. 2010) (*citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)). Actions are "willful" if they either have the purpose of producing injury or have a substantial certainty of producing injury. *In re Conte*, 33 F.3d 303, 307-09 (3d Cir. 1994). "Willful injury may . . . be established indirectly by evidence of both the debtor's knowledge of the creditor's . . . rights and the debtor's knowledge that the conduct will cause particularized harm." *In re*

*Paul*, 266 B.R. 686, 696 (Bankr. N.D. Ill. 2001) (*citing In re Longley*, 235 B.R. 651, 656 (B.A.P. 10th Cir. 1999)).

An injury is "malicious" if it was caused by a wrongful act done intentionally and without just cause. *See In re Coley*, 433 B.R. at 498 (citations omitted); *see also In re Paul*, 266 B.R. at 696. "Maliciousness" under § 523(a)(6) does not require a showing of "personal hatred, spite or ill-will." *In re Harris*, 2011 Bankr. LEXIS 2720, 2011 WL 2877722, *3 (Adv. No. 1-10-ap-00405-RNO, Bankr. M.D. Pa. July 14, 2011). Rather, the focus of the inquiry is on the debtor's intentional commission of a wrongful act that is substantially certain to cause damage to the plaintiff or its interests. When assessing the debtor's intent, a subjective standard is used. "The debt will only be excepted from the discharge . . . if the debtor had 'actual knowledge that harm to the creditor was substantially certain'" to occur. *In re Mirner*, 2010 Bankr. LEXIS 2120, 2010 WL 2653296, *4 (Bankr. N.D. Cal. July 2, 2010) (*quoting In re Su*, 290 F.3d 1140, 1145-46 (9th Cir. 2002)).

As discussed *supra*, the evidence establishes that the Defendant granted WBL a security interest in the Vehicle, which WBL perfected by submitting the DMV Lien Application to PennDOT to have its lien recorded on the title to the Vehicle. There is no genuine issue of fact as to the Defendant's knowledge of WBL's lien on the Vehicle because the Defendant approved the Loan Documents that granted WBL a security interest in the Vehicle and then executed the DMV Lien Application to allow WBL to record its lien on the title to the Vehicle. Despite his knowledge of WBL's lien on the Vehicle, the Defendant willfully transferred the Vehicle to this daughter to satisfy the $20,000.00 debt he owed to his sister. More egregiously, he did so *after* he intentionally stopped making payments on the debt owed to WBL.

13

Ultimately, there is no genuine issue of material fact as to: (i) WBL having a valid lien on the Vehicle; (ii) the Defendant having knowledge of WBL's lien on the Vehicle; and (iii) the Defendant fraudulently transferring the Vehicle to his daughter to satisfy the $20,000.00 debt owed to his sister *after* the Defendant ceased making payments on the debt owed to WBL. For these reasons, WBL believes and avers that the debt the Defendant owes to WBL is non-dischargeable under Section 523(a)(6).

### e. **Denial of Discharge Under Section 727**

Due to the Defendant's transfer of the Vehicle to his daughter within the one (1) year preceding his bankruptcy filing, WBL avers that this Court should deny the Defendant's request for a discharge. Section 727(a)(2) of the Bankruptcy Code provides, in pertinent part, that the court shall grant the debtor a discharge unless the debtor, with the intent to hinder, delay, or defraud a creditor has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the debtor within one (1) year before the date of the filing of the petition. 11 U.S.C. §727(a)(2).

By his own testimony, the Defendant admitted that, in or around June of 2014, he transferred the Vehicle to his daughter to satisfy a $20,000.00 debt owed to his sister. Whether WBL had a valid lien against the Vehicle (which it did) or not is of no moment. In either case, the Defendant intentionally transferred property that either: (i) WBL could have repossessed upon obtaining relief from the automatic stay; or (ii) the Chapter 7 Trustee could have liquidated to and for the benefit of general unsecured creditors. For these reasons, WBL believes that grounds exist to deny the Defendant a discharge in his bankruptcy case.

14

WHEREFORE, World Business Lenders, LLC, respectfully submits the foregoing Brief and prays that this Court grant summary judgment in its favor.

Respectfully submitted:

BERNSTEIN-BURKLEY, P.C.

Date:   September 8, 2016

By: */s/ Daniel R. Schimizzi*
Daniel R. Schimizzi, Esq.
PA I.D.: 311869
dschimizzi@bernsteinlaw.com
Kirk B. Burkley, Esq.
PA I.D.: 89511
kburkley@bernsteinlaw.com
BERNSTEIN-BURKLEY, P.C.
707 Grant St., Ste. 2200, Gulf Tower
Pittsburgh, PA 15219
Phone:(412)456-8121
Fax:    (412)456-8135

15