# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | | |
| BUBACAR B. BARRY | Chapter: | 7 |
| Debtor(s) | Case Number: | 5:15-bk-05281-RNO |
| WORLD BUSINESS LENDERS, LLC | | |
| Plaintiff(s) | Adversary Number: | 5-16-ap-00038-RNO |
| v. | | |
| BUBACAR B. BARRY | Document No.: | 13 |
| Defendant(s) | Nature of Proceeding: | Motion for Summary Judgment |

## OPINION[1]

Plaintiff, World Business Lenders, LLC ("WBL"), filed a three count Complaint requesting that its debt be found non-dischargeable and the Debtor/Defendant, Bubacar Barry ("Debtor"), be denied a Chapter 7 discharge. WBL moved for summary judgment on September 8, 2016. For the reasons stated below, the Motion is denied.

**I.  Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

**II.  Facts and Procedural History**

A voluntary petition under Chapter 7 of the Bankruptcy Code was filed by the Debtor on December 10, 2015. This Adversary Proceeding was commenced by WBL on March 29, 2016. The Complaint alleges that the Debtor guaranteed payment of a Promissory Note executed by

---

[1]  Drafted with the assistance of Maria Babajanian, Esq., Law Clerk.

1

Community Check Cashing Services, Inc. ("CCCS"). Compl. Objecting to Dischargeability of Debt Pursuant to Section 523(a) of the Bankruptcy Code and Objecting to Debtor's Discharge Pursuant to Section 727(a) of the Bankruptcy Code ¶¶ 5-10, March 29, 2016, ECF No. 1 ("Complaint").

It is alleged that the Debtor granted a first lien in favor of WBL on a 2009 Mercedes Benz ("Mercedes") to secure the Note and Guaranty ("Loan Documents"). Complaint ¶¶ 9-10, ECF No. 1. Upon default of the Note, WBL alleges that it confessed judgment against CCCS and the Debtor in the Court of Common Pleas of Monroe County, Pennsylvania, in the amount of $42,291.26 on December 22, 2014. Complaint ¶¶ 11-12, ECF No. 1.

Subsequent to filing for bankruptcy, the Debtor filed schedules of assets and liabilities in the Chapter 7 bankruptcy case on December 24, 2015. Included in Schedule E/F – Creditors Who Have Unsecured Claims, the Debtor listed WBL as a nonpriority unsecured creditor in the amount of $93,000.00 for a "business debt," and listed CCCS as a co-debtor for this claim on Schedule H. The Mercedes was not listed as an asset on the Schedules. The Debtor also filed a Statement of Financial Affairs ("SFA") in the bankruptcy case. In his response to question 10 of the SFA, the Debtor states that the Mercedes was attached, seized, or levied on November 18, 2015, and lists WBL as the creditor. In his response to question 18 of the SFA, he states that within two years before filing for bankruptcy he transferred the Mercedes to his daughter, Haby Barry ("daughter"). The Debtor additionally describes the property transferred as a "2009 Mercedes Benz titled in Debtor's name only but owned by his daughter." In describing any property or payments received in exchange for the Mercedes, the Debtor stated "none" and that it "was owned by the Debtor in name only."

2

The Complaint alleges that the Debtor knowingly, intentionally, and without notice to WBL, transferred the Mercedes to his daughter and/or exported it to Senegal around July of 2015. Complaint ¶¶ 13, 17-18, 36, ECF No. 1. WBL therefore argues that the debt owed under the Note should be declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A)[2] and/or § 523(a)(6) of the Bankruptcy Code, and Debtor should be denied a discharge as to all debts under § 727(a)(2)(A). Briefs have been submitted in support of and in opposition to the Motion. The Motion is now ripe for decision.

## III. Discussion

### A. Standard to Decide a Motion for Summary Judgment Under F.R.B.P. 7056

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. Pursuant to Rule 56, summary judgment is appropriate and shall be granted when the movant establishes that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 2578 (2006); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993); *In re Eury*, 544 B.R. 563, 565 (Bankr. W.D.Pa. 2016). A material fact is one that "might affect the outcome of the suit under [substantive] governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011). The initial burden of proof is on the movant to show that there is no genuine dispute of material fact, which may be established by citing materials in the record such as "depositions, documents, affidavits,

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

stipulations, admissions, and interrogatory answers." *In re Scalera*, 2013 WL 5963554, at *1 (Bankr. W.D.Pa. 2013).

Once the movant has satisfied the initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must instead show that there is a genuine issue for trial. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56 (1986)). "The nonmoving party must go beyond the pleadings and point to specific facts showing that there is a genuine issue for trial." *Veasey v. Fisher*, 307 F.App'x 614, 615 (3d Cir. 2009) (citing *Celotex Corp.*, 106 S.Ct. at 2553). The Supreme Court has stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S.Ct. at 1776.

When considering a motion for summary judgment, all inferences shall be drawn in a light most favorable to the non-moving party, here the Debtor. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001); *In re Eury*, 544 B.R. 563, 565 (Bankr. W.D.Pa. 2016). At this stage, a court must not weigh the evidence and make a determination as to the truth of a matter, but must instead decide if there is a genuine issue for trial. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 106 S.Ct. at 2507).

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of a fact that is not subject to reasonable dispute when it is either generally known or capable of being accurately and readily determined by sources whose accuracy cannot reasonably be questioned. *In re LandSource Communities Dev. LLC*, 485 B.R. 310, 315-16 (Bankr. D.Del. 2013) (citing *In re Indian Palms Assoc., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995)). Items that may be judicially noticed

include the docket, claims register, and documents from a bankruptcy case which cannot reasonably be questioned. *Id.* I, therefore, take judicial notice of documents filed in the Debtor's underlying bankruptcy case and in this Adversary Proceeding when considering the Motion. However, adjudicative facts contained in those documents will generally need to be proven by admissible evidence. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008).

    **B.**    **Counts of Non-Dischargeability Under § 523**

        **i. Count I – Non-Dischargeability Under § 523(a)(2)(A)**

Under § 523(a)(2)(A), a debt is non-dischargeable if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). WBL alleges two alternative grounds for non-dischargeability under this subsection: (1) that the Debtor made a false representation; and (2) that the Debtor made a fraudulent transfer. I will first discuss non-dischargeability of a debt obtained by a false representation.

        **1. False Representation**

When requesting non-dischargeability of a debt due to a false representation, the burden of proof is on the creditor to show, by a preponderance of the evidence, that: (1) the debtor knowingly made a false representation of a material fact; (2) the representation was made with the intent and purpose to deceive the creditor; (3) the creditor justifiably relied on the representation; and (4) the creditor suffered damages as a proximate cause of the representation. *In re Giquinto*, 388 B.R. 152, 165 (Bankr. E.D.Pa. 2008).

WBL alleges that if the Debtor was not the owner of the Mercedes as he indicated in his SFA, then the Debtor made a false representation regarding his ownership when agreeing to the

5

Case 5:16-ap-00038-JJT    Doc 31    Filed 11/17/16    Entered 11/17/16 15:11:28    Desc
Main Document    Page 5 of 19

terms of the Note, specifically the security interest provision. Complaint ¶ 18, ECF No. 1; Pl. World Business Lenders, LLC's Br. in Support of Mot. for Summary Judgment against Def. Bubacar B. Barry 11, September 8, 2016, ECF No. 14 ("Plaintiff's Brief"). WBL argues that the Debtor executed the Loan Documents and a DMV Lien Application authorizing a first lien on the Mercedes. Plaintiff's Brief 11, ECF No. 14. WBL further states that if the daughter was instead the owner, then "the Defendant knowingly and intentionally made a misrepresentation of material fact to induce WBL into taking a security interest in the Vehicle that he claims he did not own." Complaint ¶ 24, ECF No. 1. Further, WBL alleges that the Debtor knowingly and intentionally transferred the Mercedes to his daughter without giving prior notice to WBL or satisfying the lien, proving that he never had any intention of repaying WBL. Complaint ¶¶ 25-26, ECF No. 1.

WBL states in its Brief that it justifiably relied on the security interest when making the Loan, that it would not have otherwise funded the Loan, and that it suffered damages by being deprived of the collateral. Plaintiff's Brief 11-12, ECF No. 14. WBL further alleges that if the Debtor did not agree to grant a security interest, then the execution of the Note agreeing to the same indicates that the Debtor: (1) misrepresented his intentions for the purpose of inducing WBL to make the loan; (2) committed fraud in stating he would grant a security interest; or (3) deceived WBL into believing he would grant a security interest. Plaintiff's Brief 11, ECF No. 14. In any circumstance, WBL argues that if a security interest was not granted, then the Debtor knew the provisions agreed to in the Note were false and therefore intended to deceive WBL. Plaintiff's Brief 11, ECF No. 14.

The Debtor denied that he executed the Loan Documents and granted a lien to WBL on the Mercedes. Debtor's Answer to Compl. Objecting to Dischargeability of Debt and Objecting to Debtor's Discharge ¶¶ 5-8, ECF No. 4 ("Answer"). The Debtor admitted that he "conveyed the

6

Vehicle by gift to his daughter," but denied that he knowingly or intentionally made false representations to WBL. Answer ¶¶ 13, 24, ECF No. 4. In the Requests for Admissions ("RFA") submitted on August 4, 2016, the Debtor admitted, among other things, that: (1) WBL issued the Loan to CCCS; (2) the title to the Mercedes attached as Exhibit C to the RFA is a true and correct copy; (3) the title indicates the Debtor is the registered owner of the Mercedes; and (4) the Debtor transferred the Mercedes to a relative. Plaintiff's Brief Ex. 5 8-10, ECF No. 14-5. However, the Debtor denied signing the Loan Documents, granting WBL a lien on the Mercedes, or having the Mercedes registered in his name at the time he allegedly granted a lien to WBL. Plaintiff's Brief Ex. 5 8-10, ECF No. 14-5. The Debtor did not admit or deny whether he owned the Mercedes at the time he would have allegedly granted the lien to WBL. Plaintiff's Brief Ex. 5 9, ECF No. 14-5.

Two underlying issues relevant to the first element, Debtor's alleged false representation, are whether the Debtor executed the Loan Documents and whether WBL had a security interest in the Mercedes. WBL attempts to refute the Debtor's argument that the Loan Documents are not valid, stating that "applicable federal and state law recognize the validity of electronic signatures." Plaintiff's Brief 6, ECF No. 14. WBL also argues that the Debtor's agreement to the terms of the Note is undisputed because he subsequently made payments to WBL under it. Plaintiff's Brief 8, ECF No. 14. However, the Debtor does not allege that electronic signatures are not valid, but instead disputes that he signed the Note at all – electronically or otherwise. Plaintiff's Brief 8, ECF No. 14.

Under Pennsylvania state law, "the authenticity of, and authority to make, each signature . . . is admitted unless specifically denied in the pleadings." 13. Pa.C.S. § 3308(a). Once a signature's validity is denied, "the burden of establishing validity is on the person claiming

7

validity, but the signature is presumed to be authentic and authorized." *Id.* The presumption of an authentic and authorized signature means that "the trier of fact must find the existence of a fact until evidence is introduced that supports a finding of its nonexistence." *PHH Mortg. Corp. v. Powell*, 100 A.3d 611, 618 (Pa. Super. Ct. 2014) (quoting 13 Pa.C.S. § 1206).

The party denying a signature's validity must therefore first rebut the presumption of an authentic and authorized signature by producing sufficient evidence to permit a trier of fact to find in his favor at trial. *Id.* at 619. Once the presumption is rebutted, the burden then shifts to the proponent of the signature's validity. This burden is to "persuad[e] the trier of fact that the existence of the fact is more probable than its nonexistence." *Id.* at 617 (quoting 13 Pa.C.S. § 1201(b)(8)). Here, the Debtor specifically denied executing the Loan Documents. Answer ¶¶ 5-8, ECF No. 4. The Debtor must also provide evidence to rebut the presumption of the signatures' validity, such that a trier of fact may find in his favor on this issue at trial. In his deposition taken August 8, 2016 ("Deposition"), the Debtor stated that he did not click "any final accept buttons" when going through the Loan Documents on the computer. Plaintiff's Brief Ex. 1 15, ECF No. 14-1. The Debtor also disputes knowing that the loan was being funded by WBL, stating that "in the beginning I didn't know. I thought it was all coming from David Smith because I never talked to [anybody] from World Business Lender[s] at the beginning of that loan." Plaintiff's Brief Ex. 1 8, ECF No. 14-1. Deposition testimony can provide a sufficient basis to establish whether a signature is authentic. *PHH Mortg. Corp.*, 100 A.3d at 619 (citing *Commonwealth v. Brooks*, 508 A.2d 316, 318 (Pa. Super. Ct. 1986)). The Debtor's denial and testimony therefore creates a genuine issue of material fact as to whether he executed the Loan Documents.

The next point of contention relevant to the Debtor's alleged false representation is whether WBL had a security interest in the Mercedes. In bankruptcy cases, generally a security interest

8

must have attached and been perfected prepetition. 11 U.S.C. § 544(a); *also see In re Muir House, Inc.*, 389 B.R. 403, 406 (Bankr. M.D.Pa. 2008); *In re Flax*, 179 B.R. 408, 412 (Bankr. E.D.N.Y. 1995). A security interest in goods, including motor vehicles, *attaches* and is enforceable when value has been given, the debtor has rights in the collateral, and the debtor authenticates a security agreement providing a description of the collateral or the creditor has possession of the collateral. *In re Dean*, 2012 WL 4634291, at *3 (Bankr. M.D.Pa. 2012) (citing 13 Pa.C.S. § 9203(b)). A security interest in motor vehicles is *perfected* when the Department of Transportation receives a completed application specifying the lienholder's name and address, the appropriate fee, and the manufacturer's statement of origin or the existing certificate of title. 75 Pa.C.S. § 1132.1(a); *In re Woods*, 2011 WL 4807932, at *6 n.13 (Bankr. M.D.Pa. 2011). However, perfection of a security interest first requires attachment. 13 Pa.C.S. § 9308(a); *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 237 (M.D.Pa. 2004) ("Without attachment, there can be no perfection."). Once a security interest in a motor vehicle is perfected, a certificate of title is issued that lists the first two lienholders. 75 Pa.C.S. § 1132.1(d); *In re Pollilo*, 2010 WL 235125, at *4 (Bankr. E.D.Pa. 2010) ("The notation of a lien on a certificate of title reflects the perfection of the lien on the vehicle."). If a vehicle is transferred, the owner generally must sign the certificate of title. *In re Pollilo,* 2010 WL 235125, at *4 (citing 75 Pa.C.S. § 1111(a)).

Looking first to the Note, section 6 pertains to security interests. Plaintiff's Brief Ex. 2 9, ECF No. 14-2. Noticeably absent from this section is a description of the Mercedes as collateral. Instead, there is a general reference that collateral includes "all personal property now owned or hereafter acquired by the Borrower" and a statement that the "Borrower shall ensure that Lender is named as the only lien holder on the titles to the motor vehicles listed on Schedule A to this Loan Agreement." Plaintiff's Brief Ex. 2 9, ECF No. 14-2. Schedule A includes the VIN number

9

of the Mercedes and states that the Debtor is the owner. Plaintiff's Brief Ex. 2 15, ECF No. 14-2. It is ambiguous whether the Mercedes is part of the collateral included because the "Borrower" referred to in the Note is defined as CCCS, not as the Debtor. Plaintiff's Brief Ex. 2 8, ECF No. 14-2. The Mercedes therefore might not fall under the umbrella of all personal property owned or acquired by CCCS, given that this is at odds with the Debtor's ownership as stated in Schedule A of the Note. Any ambiguity in the terms of a contract is construed against the drafting party. *Lindenbaum v. NCO Fin. Sys., Inc.,* 2011 WL 2848748, at *1 (E.D.Pa. 2011). Construing these provisions in favor of the Debtor as the non-drafting party, the Note does not establish that WBL had a perfected security interest in the Mercedes. This is a second outstanding material issue of fact.

Looking to the Guaranty, the first provision states "[t]his Guaranty also is secured by . . . the titles to the motor vehicles listed on Exhibit 1 to this Guaranty." Plaintiff's Brief Ex. 2 16, ECF No. 14-2. Exhibit 1 to the Guaranty also lists the VIN number of the Mercedes and states that the Debtor is the owner. Plaintiff's Brief Ex. 2 19, ECF No. 14-2. This appears to be a sufficient description to satisfy 13 Pa.C.S. § 9203(b)(3)(i). However, the Debtor still disputes executing the Guaranty and having rights in the collateral at the time of execution. Plaintiff's Brief Ex. 5 8-10, ECF No. 14-5. To authenticate an agreement means to sign, execute, or otherwise adopt a symbol with the intent to accept. 13 Pa.C.S. § 9202; *Gruff v. Dep't of State*, 934 A.2d 769, 773 (Pa. Commw. Ct. 2007). As discussed above, the Debtor denied that he ever signed any of the Loan Documents. Without authentication, there cannot be attachment, and without attachment there cannot be perfection.

Turning to the second element of § 523(a)(2)(A), there is a dispute regarding the intent of the Debtor at the time the Note was allegedly executed. WBL and the Debtor directly contradict

10

one another in their assertions regarding whether there was an intent to deceive. Intent can be proven by circumstantial evidence. *In re Witmer*, 541 B.R. 769, 779 (Bankr. M.D.Pa. 2015). In his Deposition, the Debtor stated that there was no mention of the car at the time the loan was issued, but instead claims that it was brought up at a later time. Plaintiff's Brief Ex. 1 22, ECF No. 14-1. If true, this indicates the Debtor did not have the intent to deceive WBL into believing that he owned the Mercedes at the time the Loan Documents were allegedly executed. When viewed in a light most favorable to the Debtor, I cannot find that the Debtor knowingly made a false representation of material fact with the intent and purpose to deceive WBL.

Even assuming arguendo that WBL justifiably relied on the Debtor's ownership of the Mercedes and suffered damages, thereby satisfying the third and fourth elements of § 523(a)(2)(A), which are not disputed by the Debtor, there is a genuine dispute regarding whether the Debtor satisfied the first two elements by knowingly making a false representation of a material fact with the intent and purpose of deceiving WBL. WBL asserts that the Debtor's agreement to the terms of the Note constitutes a false representation. However, if the Debtor never signed the Note, then WBL's assertion that a false representation was made by agreeing to the terms of the Note fails and the first requirement for non-dischargeability would not be met. There is a dispute of material fact regarding whether the Debtor executed the Loan Documents, which in turn leaves open the question of whether the Debtor made a false representation of ownership. There is a dispute of material fact of whether any alleged misrepresentation was made with the intent to deceive WBL. These genuine issues of material fact remain outstanding for trial. The Motion for Summary Judgment is therefore denied as to non-dischargeability for a debt obtained by a false representation under § 523(a)(2)(A).

11

Case 5:16-ap-00038-JJT    Doc 31    Filed 11/17/16    Entered 11/17/16 15:11:28    Desc
Main Document    Page 11 of 19

## 2. Actual Fraud

WBL's debt may alternatively be non-dischargeable under § 523(a)(2)(A) if actual fraud is established. In a recent decision, the Supreme Court ruled that "actual fraud" under § 523(a)(2)(A) "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016). In defining a fraudulent conveyance, the Court stated that "the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt [but] . . . is in the acts of concealment and hindrance." *Id.* at 1578. The circumstances in which this exception would apply are limited because in order to satisfy the "obtained by" requirement, the recipient of the transfer must also have intended to commit fraud. *Id.* at 1589. As the Court explained:

> It is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. . . . Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the 'obtained by' requirement.

*Id.* Under § 523(a)(2)(A), the burden is on the creditor to establish actual fraud by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991).

In *Husky*, the debtor was an owner of multiple entities, one of which, Chrysalis Manufacturing Corp., incurred a debt to Husky International Electronics, Inc. *Husky*, 136 S.Ct. at 1585. In an effort to drain assets that could be used to repay Husky, the debtor transferred funds from Chrysalis to several other entities that he controlled. *Id.* Husky initiated an adversary proceeding to hold the debtor personally liable for Chrysalis' debt. I find the facts in *Husky* distinguishable from the facts in this case.

12

WBL does not allege that the *transfer* from the Debtor to his daughter constituted actual fraud. Instead, WBL alleges that *false statements* made by the Debtor in pledging the Mercedes as collateral constituted actual fraud. Plaintiff's Brief 12, ECF No. 14. WBL briefly mentions that "the Defendant disposed of the Vehicle during the commission of a fraudulent transfer to and for the benefit of an insider [and] . . . caused damage to WBL by depriving WBL of the Vehicle that collateralized WBL's Loan," but fails to assert that this conduct is "actual fraud" or that the daughter, as the recipient, had the requisite intent to commit fraud. Noticeably absent are any alleged facts indicating the intent of the daughter to commit fraud. WBL instead only argues that the transfer is proof of the Debtor's fraudulent intentions. Complaint ¶ 25, ECF No. 1. Viewing the facts in a light most favorable to the Debtor, I cannot find that WBL is entitled to judgment as a matter of law because it has failed to allege that the transfer constituted actual fraud and has not established: (1) that it had a lien on the Mercedes; and (2) that the daughter had fraudulent intent.

### ii. Count II – Non-Dischargeability Under § 523(a)(6)

Under §523(a)(6), a discharge will not apply to a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The burden of proof is on the creditor to show that the debt arose from a willful and malicious injury by a preponderance of the evidence. *In re Granoff*, 250 F.App'x 494, 496 (3d Cir. 2007) (citing *Grogan*, 498 U.S. 279 at 291, 111 S.Ct. at 661). An act is willful and malicious if the debtor either purposefully caused the injury or was substantially certain that the injury would result. *In re Macri*, 642 F.App'x 128, 129 (3d Cir. 2016); *In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994). Willfulness can be established indirectly by evidence that a debtor was aware of a creditor's rights, and maliciousness can be established even if there was no ill-will. *In re Glenn*, 470 B.R. 731, 736 (Bankr. M.D.Pa. 2012).

13

Case 5:16-ap-00038-JJT    Doc 31    Filed 11/17/16    Entered 11/17/16 15:11:28    Desc
Main Document    Page 13 of 19

By transferring or selling the Mercedes to the Debtor's daughter, WBL states that the Debtor willfully, intentionally, and/or maliciously destroyed WBL's lien and/or converted the collateral without consent.[3] Complaint ¶ 32, ECF No. 1. As discussed above when addressing Count I of the Complaint, there is a genuine dispute of material fact as to whether the Loan Documents were executed by the Debtor. The issue of whether the Debtor agreed to a lien on the Mercedes as set forth in the Loan Documents is therefore also in dispute. Although the Debtor admits that the title submitted by WBL is a true and correct copy and that WBL is listed as a first lienholder, he denies that a lien was ever granted to WBL in his responses to the First Set of Interrogatories ("Interrogatories"). Plaintiff's Brief Ex. 5 21, ECF No. 14-5.

As to the claim of conversion, a deprivation of a right, use, or possession of property "does not necessarily mean that the resulting debt is excepted from discharge under § 523(a)(6) . . . [but] only if the act produces a willful and malicious injury." *In re Glenn*, 470 B.R. 731, 738 (Bankr. M.D.Pa. 2012). Therefore, the § 523(a)(2)(6) standard for a conversion claim is no different than any other willful and malicious injury claim.

To prevail on summary judgment, WBL must show that the Debtor transferred the Mercedes with either the purpose of injuring WBL or with the substantial certainty that WBL would be injured. However, when a debtor "den[ies] that [his] actions were willful or malicious, averring that [he] held a sincere belief, however misguided" that the property in question was not subject to a security agreement, then intent is at issue. *Id*. at 738. A dispute regarding the intent of the Debtor is "an issue of material fact which, if genuine, is sufficient to preclude summary judgment." *Marzano v. Computer Sci. Corp. Inc.*, 91 F.3d 497, 510 (3d Cir. 1996).

---

[3] It is worth noting that the transfer of a secured creditor's collateral may also be a criminal offense. Under Pennsylvania state law, it is a second degree misdemeanor when a person "destroys, removes, conceals, encumbers, transfers, or otherwise deals with property subject to a security interest . . . with intent to hinder enforcement of such interest." 18 Pa.C.S. § 4110.

14

The Debtor disputes that he had the requisite intent and denies knowing that WBL had a lien on the Title at the time of the transfer. Answer ¶ 33, ECF No. 4; Plaintiff's Brief Ex. 5 10, ECF No. 14-5. The Debtor also states that he never knew he was dealing with WBL, but instead believed he was dealing with an individual named David Smith at all times during the negotiation of the terms and conditions of the Loan. Plaintiff's Brief Ex. 1 8, ECF No. 14-1. The Debtor therefore disputes that he executed the Loan Documents, that the property was collateral under the Loan Documents, and that he knew WBL was funding the loan. Viewing the facts in a light most favorable to the Debtor, the existence of a security interest and the intent to willfully and maliciously injure the property interest of WBL are genuinely in dispute, thereby precluding summary judgment in favor of WBL.

### C. Count III – Denial of Discharge Under § 727(a)(2)(A)

Under § 727(a)(2)(A), a Chapter 7 discharge will not be granted if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). A creditor opposing the discharge must show, by a preponderance of the evidence, that: (1) the debtor transferred or concealed property; (2) the property belonged to the debtor; (3) the transfer or concealment occurred within a year of the filing of the petition; and (4) the debtor had the intent to hinder, delay, or defraud the creditor. *In re DiLoreto*, 266 F. App'x 140, 144 (3d Cir. 2008); *In re Rose*, 387 B.R. 740, 742 (Bankr. M.D.Pa. 2008); *In re Dawley*, 312 B.R. 765, 782 (Bankr. E.D.Pa. 2004).

WBL states that the Debtor transferred the Mercedes within the one-year period preceding his bankruptcy filing and therefore, regardless of whether WBL had a valid lien, this constitutes an intentional transfer of property that could have otherwise been repossessed or liquidated for the

15

benefit of creditors. Plaintiff's Brief 14, ECF No. 14. WBL alleges that the Mercedes was knowingly and intentionally transferred without notice with the intent to hinder, delay, or defraud creditors. Complaint ¶¶ 36-37, ECF No. 1.

There are two alleged transfers in question – one exporting the Mercedes to Senegal and another transferring it to the Debtor's daughter. WBL states that the Debtor exported the Mercedes to Senegal in July of 2015. Complaint ¶ 13, ECF No. 1. The Debtor denies exporting the Mercedes in July of 2015, and states that he had previously transferred it to his daughter. Answer ¶ 13, ECF No. 4. The Debtor also states in his Deposition that he had no knowledge of the Mercedes' location subsequent to the transfer, stating "I don't know whether they sent it to Africa." Plaintiff's Brief Ex. 1 31, ECF No. 14-1. However, when asked where the "transferee" was located, presumably in reference to his daughter, the Debtor stated that "I am not sure, but in Senegal." Plaintiff's Brief Ex. 5 23, ECF No. 14-5. Therefore, by the Debtor's account, he had no knowledge of the Mercedes' location after transferring it to his daughter, but suspected that his daughter, the transferee, may be in Senegal. Although WBL mentions that the Mercedes was exported to Senegal as part of the factual history, Count III of the Complaint focuses only on the transfer to the Debtor's daughter. The focus of this analysis will therefore only be on the first alleged transfer to the Debtor's daughter.

The first element of § 727(a)(2)(A) is met, as it is undisputed that the Debtor transferred the Mercedes to his daughter. The other elements are either in dispute or are contradicted by the record. As to the second element, the Debtor presents varying accounts of whether he owned the Mercedes at the time of the transfer. In his answer to question 7 of the Interrogatories, he states that the Mercedes was in his name at some point between January 1, 2013 and the Petition Date, but does not provide specific dates of ownership or disposition. Plaintiff's Brief Ex. 5 20, ECF No.

16

14-5. In his Deposition, the Debtor states that he transferred the Mercedes to his daughter and that "I didn't own the car *after that*." Plaintiff's Brief Ex. 1 29, ECF No. 14-1. In the RFA, the Debtor admitted in questions 9 and 11 that the title for the Mercedes attached as an exhibit is a true and correct copy and that the title indicated the Debtor is the registered owner. Plaintiff's Brief Ex. 5 8-9, ECF No. 14-5. The Debtor also does not dispute that he provided proof of ownership to WBL. Response of Debtor/Def., Bubacar B. Barry to the "Undisputed Material Facts" in Support of its Mot. For Summary Judgment of World Business Lenders, LLC ¶ 4, October 7, 2016, ECF No. 19 ("Debtor's Response"). However, the Debtor denied that the Mercedes was registered in his name at the time he allegedly granted a lien to WBL, and he did not provide an answer as to whether he owned the Mercedes at that time. Plaintiff's Brief Ex. 5 9, ECF No. 14-5.

In the bankruptcy case, the Debtor's SFA indicated that the Mercedes was "titled in Debtor's name only but owned by his daughter." Therefore, it appears that the Debtor has both admitted and denied ownership of the Mercedes, putting this fact in dispute with the assertions by WBL. I do not weigh the evidence at this stage, therefore I cannot make a finding as to whether the Debtor was the owner at the time of the transfer.

The third element requires that the transfer to the daughter have occurred within one year of the filing of the petition on December 10, 2015. Although WBL and the Debtor both agree that the date of the transfer was June of 2014 in the Statement of Material Facts and Response to Material Facts, this date falls outside of the one-year period requirement and is contradicted by other documents filed in this Adversary Proceeding. Pl. World Business Lenders, LLC's Statement of Material Facts Not Subject to a Genuine Dispute ¶ 19, September 8, 2016, ECF No. 15 ("Plaintiff's Facts"); Debtor's Response ¶ 12, ECF No. 19.

17

The date of the transfer as alleged by WBL in the Complaint appears to be contradicted by both WBL's Brief and Statement of Material Facts. In the Complaint, WBL alleges that the Debtor transferred the Mercedes around July of 2015. Complaint ¶ 36, ECF No. 1. However, in WBL's Brief and Statement of Material Facts, WBL states that the Debtor made the transfer in June of 2014. Plaintiff's Brief 2, ECF No. 14; Plaintiff's Facts ¶ 19, ECF No. 15.

Documents submitted by the Debtor also contradict one another. The Debtor stated in his Deposition that the transfer occurred in June of 2014 and he did not dispute the June 2014 transfer date in his Response to Material Facts. Plaintiff's Brief Ex. 1 30, ECF No. 14-1; Debtor's Response, ¶ 12, ECF No. 19. However, in the RFA, the Debtor admits that he transferred the Mercedes within one year of the petition date, and in his answer to question 17 of the Interrogatories he states that the Affidavit of Gift was signed on June 12, 2015. Plaintiff's Brief Ex. 5 10, 22, ECF No. 14-5. The Affidavit of Gift submitted by the Debtor that shows the transfer to the daughter is also dated June 12, 2015. Debtor/Def., Bubacar B. [Barry's] Exhibits in Support of His Mem. in Opposition to the Pl.'s Mot. for Summary Judgment 3, October 7, 2016, ECF No. 20 ("Affidavit of Gift").

If the correct date is June of 2014, then § 727(a)(2)(A) would not apply because the date of the transfer falls outside of the one-year period prior to the petition date. A material outstanding issue of fact is when any transfer of the Mercedes to the Debtor's daughter occurred. The Motion is denied with regard to Count III of the Complaint.

Case 5:16-ap-00038-JJT    Doc 31    Filed 11/17/16    Entered 11/17/16 15:11:28    Desc
Main Document    Page 18 of 19

IV. **Conclusion**

For all the above reasons, WBL's Motion for Summary Judgment is denied as to the non-dischargeability claims under § 523(a)(2)(A) and §523(a)(6) and denial of discharge claim under § 727(a)(2)(A).

By the Court,

_Robert N. Opel, II, Chief Bankruptcy Judge_
(BI)

Dated: November 17, 2016